UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHARYN MARIE AGUGLIA,

          Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

**DECISION AND ORDER**

6:19-CV-06110 EAW

## **INTRODUCTION**

Represented by counsel, plaintiff Sharyn Marie Aguglia ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 13; Dkt. 17). For the reasons discussed below, the Commissioner's motion (Dkt. 17) is granted and Plaintiff's motion (Dkt. 13) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on October 14, 2015. (Dkt. 10 at 13, 136).[1] In her application, Plaintiff alleged disability beginning April 27, 2012, due to back pain, depression, anxiety, tinnitus, incidental tremors, and gastrointestinal reflux disease. (*Id*. at 13, 137-38). Plaintiff's application was initially denied on December 1, 2015. (*Id.* at 13, 136-42). At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") Brian Kane on February 16, 2018, in Rochester, New York. (*Id.* at 13, 87-118). On March 16, 2018, the ALJ issued an unfavorable decision. (*Id.* at 10-26). Plaintiff requested Appeals Council review; her request was denied on December 12, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 4-9). This action followed.

## LEGAL STANDARD

**I.   District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.      The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2013. (Dkt. 10 at 15). At step one, the ALJ determined that Plaintiff did not engage in substantial gainful work activity from the alleged onset date of April 27, 2012, through the date last insured. (*Id*.).

At step two, the ALJ found that, through the date last insured, Plaintiff suffered from the severe impairments of low back disorder and obesity. (*Id.*). The ALJ also found that Plaintiff suffered from the non-severe mental impairments of high blood pressure, acid reflux, depression, and anxiety. (*Id.* at 15-17).

At step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 18). The ALJ particularly considered the criteria of Listing 1.04 in reaching this determination. (*Id*.).

Before proceeding to step four, the ALJ determined that, through the date last insured, Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following additional limitations:

> [S]he was limited to lift and carry twenty pounds occasionally and ten pounds frequently; occasionally bending, squatting or crawling; stand and walk for two hours, and sit six hours but had to change positions every two hours; she could frequently handle or finger; perform simple and repetitive tasks; and could occasionally interact with coworkers, but never with the public.

(*Id.*).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work through the date last insured.  (*Id.* at 20).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could have performed through the date last insured, including the representative occupations of addresser and document preparer.  (*Id.* at 20-21).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from April 27, 2012, through December 31, 2013.  (*Id.* at 21).

## II.     **The Commissioner's Determination Is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that the ALJ erred by giving little weight to the opinion of Mary LoVerdi, Licensed Master Social Worker ("LMSW"), which resulted in the ALJ finding Plaintiff's mental impairments nonsevere.  For the reasons discussed below, the Court finds Plaintiff's argument to be without merit.

At step two of the disability analysis, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  The Commissioner's Regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering

simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b).

"The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012), *adopted*, 32 F. Supp. 3d 253 (N.D.N.Y. 2012). Step two's "severity" requirement is *de minimis* and is meant only to screen out the weakest of claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). However, despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor*, 32 F. Supp. 3d at 265 (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than minimal limitations in [a claimant's] ability to perform work-related functions.'" *Windom v. Berryhill*, No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) (alteration in original) (quoting *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018)).

"[T]he Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. 20 C.F.R. § 404.1520a. These regulations require application of a 'special technique' at the second and third steps of the five-step framework[.]" *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *see* 20 C.F.R. § 404.920a. First, the ALJ determines "whether the claimant has a 'medically determinable mental impairment.'" *Id.* at 265-66 (quoting 20 C.F.R. § 404.1520a(b)(1)). If the ALJ

finds the claimant has a medically determinable mental impairment, he next "must rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.*, which specifies the following four broad functional areas: (1) understanding, remembering, or applying information; (2) interaction with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). If the degree of limitation is rated as "none" or "mild," the ALJ will generally conclude that the claimant's impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 1520a(d)(1).

In the instant matter, the ALJ applied the special technique and considered "the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders" with regards to Plaintiff's medically determinable impairments of depression and anxiety. (Dkt. 10 at 15-17). Because the ALJ found that Plaintiff's mental impairments caused no more than a mild limitation in any of these areas, he determined that the impairments were non-severe. (*Id.* at 17).

In making this determination, the ALJ relied primarily on Plaintiff's medical records, including treatment records from her primary physician. The ALJ noted that in an exam from January 2013, Plaintiff's "depression was noted to be 'worsening,' but her psychiatric findings were appropriate and normal." (*Id.* at 16; *see* Dkt. 10-1 at 26). Additionally, the ALJ found import in Plaintiff not getting outpatient mental health treatment until May 2013, and the fact that she had not seen a mental health specialist since 2006 or 2007. (Dkt. 10 at 16). The ALJ also relied on a December 2013 report noting that

Plaintiff had logical thought processes, unremarkable thought content, normal perceptions, normal affect, "Oriented x 3," and good judgment despite a depressed and irritable mood. (*Id.*; *see id.* at 289). The ALJ gave little weight to the mental impairment questionnaire completed by LMSW LoVerdi on January 10, 2018, explaining that LMSW LoVerdi "did not treat Plaintiff during the period at issue and the form she completed did not allege that the restrictions reached back nearly four years." (*Id.* at 16). Further, the ALJ stated that the last portion of the questionnaire was "wholly inconsistent with the medical records from the time period being considered." (*Id.*). Based on this evidence, the ALJ found that "although [Plaintiff]'s mental impairments may have worsened at a later date," the records from the relevant time period "show conservative, unchanged medication for over ten years for depression (while [Plaintiff] was able to work), with a change in treatment only occurring nearly a year after the alleged onset date." (*Id.*).

The record before the Court demonstrates that the ALJ's step two decision was not reversible error. The ALJ thoroughly discussed the medical records related to Plaintiff's mental impairments, assigned weight to the relevant opinion of record, and explained the weight he gave using various factors listed in the regulations. *See* 20 C.F.R. § 404.927(d)(2) (finding substantial evidence supported step two determination where the ALJ assigned weight to the relevant medical opinions and explained the weight he gave to each opinion by referencing various factors listed in the regulations). Moreover, as discussed above, the ALJ applied the "special technique" for assessing mental impairments as required by the regulations. *See Monell v. Astrue*, No. 8:08-CV-0821, 2009 WL

4730226, at *3 (N.D.N.Y. Dec. 3, 2009) (finding substantial evidence supported ALJ's step two determination were ALJ "applied the 'special technique'").

Plaintiff argues that more weight should have been given to the opinion of LMSW LoVerdi due to her treating relationship with Plaintiff. While "an opinion from a treating physician is given more weight," *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008), as a social worker, LMSW LoVerdi's opinion relating to Plaintiff's disability was not entitled to controlling weight, *see Bliss v. Comm'r of Soc. Sec.*, 406 F. App'x 541 (2d Cir. 2011) ("[T]he assessment by the social worker is ineligible to receive controlling weight because social workers do not qualify as 'acceptable medical source[s].'" (alteration in original) (citing 20 C.F.R. §§ 404.1513(a), 404.1527(a)(2))). While the ALJ was required to assess this opinion, he was not required to give it any special weight.

Plaintiff also argues that it was improper for the ALJ to discount LMSW LoVerdi's opinion on the basis of her not personally treating Plaintiff during the relevant time frame. (Dkt. 13-1 at 17). LMSW LoVerdi started treating Plaintiff in 2016 (*see* Dkt. 10-2 at 130), more than two years after Plaintiff's date last insured of December 31, 2013, and the mental impairment questionnaire she filled out is dated January 10, 2018 (*id.* at 135), more than four years after the date last insured. Although "evidence cannot be disregard solely because it post-dates the relevant time period," *Shook v. Comm'r of Soc. Sec.*, No. 12-CV-185 TJM/VEB, 2013 WL 1213123, at *6 (N.D.N.Y. Jan. 25, 2013), *report and recommendation adopted*, No. 1:12-CV-185, 2013 WL 1222008 (N.D.N.Y. Mar. 25, 2013), an "opinion rendered well after a plaintiff's date last insured may be of little, or no, probative value regarding plaintiff's condition during the relevant time period," *Durakovic*

*v. Comm'r of Soc. Sec.*, No. 317CV0894TJMWBC, 2018 WL 4039372, at *4 (N.D.N.Y. May 30, 2018), *report and recommendation adopted*, No. 317CV0894TJMWBC, 2018 WL 4033757 (N.D.N.Y. Aug. 23, 2018).

In the instant matter, the ALJ accorded LMSW LoVerdi's opinion little weight not only because of its age, but because it was inconsistent with the other medical evidence of record. (*See* Dkt. 10 at 16 ("The last portion [of LMSW LoVerdi's opinion] is wholly inconsistent with the medical records from the time period being considered.")). The Court has reviewed the medical records referred to by the ALJ (*see* Dkt. 10 at 283-308; Dkt. 10-1 at 12-36), and finds his characterization is supported by substantial evidence. For example, LMSW LoVerdi opined that Plaintiff had a marked limitation in her ability to maintain concentration and was seriously limited in her ability to maintain attention (Dkt. 10-2 at 140, 142), but at an appointment Plaintiff attended with her mental health specialist on December 19, 2013, she was noted to have no apparent problem with her concentration (Dkt. 10 at 285). Accordingly, the Court finds the weight assigned by the ALJ to LMSW LoVerdi's opinion on this basis was appropriate. *See Columbel v. Comm'r of Soc. Sec.*, No. 6:16-CV-773 (CFH), 2017 WL 3175599, at *5 (N.D.N.Y. July 26, 2017) (finding the ALJ's decision to reject an opinion was appropriate where it was based primarily on evidence from after the date last insured and was "generally inconsistent with the evidence from treating and examining physicians during the relevant time period"); *McNally v. Comm'r of Soc. Sec.*, No. 5:14-CV-00076, 2015 WL 3621437, at *13 (N.D.N.Y. June 9, 2015) ("[I]t was within the ALJ's discretion to discount Dr. Lorensen's report and the subsequent treatment notes, as not demonstrating impairments which existed prior to the

date last insured."); *Dailey v. Barnhart*, 277 F. Supp. 2d 226, 233 (W.D.N.Y. 2003) ("Medical opinions given after the date that [the plaintiff]'s insured status expired are taken into consideration *if such opinions are relevant to her condition prior to that date*." (emphasis added)).

Additionally, Plaintiff contends that the ALJ should have further developed the record either by contacting LMSW LoVerdi regarding whether her opinion was retroactive or by attempting to obtain an opinion for the relevant period. (Dkt. 13-1 at 18). "It is well established in this Circuit that 'where there are no obvious gaps in the administrative record, and where the ALJ already possesses a "complete medical history," the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.'" *Jennings v. Colvin*, No. 13-CV-834, 2014 WL 3748574, at *5 (W.D.N.Y. July 29, 2014) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)). Further, an ALJ is only required to recontact "if the records received were inadequate . . . to determine whether [the plaintiff was] disabled." *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 634 (2d Cir. 2012) (omission in original) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). As explained by the Second Circuit:

> The mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician. Rather . . . the ALJ will weigh all of the evidence and see whether [he] can decide whether a claimant is disabled based on the evidence he has, even if that evidence is internally inconsistent.

*Micheli v. Astrue*, 501 Fed. App'x 26, 29-30 (2d Cir. 2012); *see also* 20 C.F.R. § 404.1520b(b) ("If any of the evidence in your case record, including any medical

opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have.").

In the instant matter, the ALJ's severity determination regarding Plaintiff's medically determinable impairments of anxiety and depression was not reversible error. The ALJ reviewed treatment records of Plaintiff's primary physician and mental health treatment providers from the alleged date of onset through the date last insured, and found that those records did not support a determination that Plaintiff's medically determinable impairments of anxiety and depression were severe. (Dkt. 10 at 16-17). Review of the records supports the ALJ's findings. At a January 28, 2013, appointment with her primary care physician, Plaintiff was noted as being oriented to time, place, person, and situation, and demonstrating appropriate mood and affect. (Dkt. 10-1 at 26). Additionally, at an April 8, 2013, primary care appointment, Plaintiff was noted as having an intact memory, being oriented to time, place, person and situation, and demonstrating an appropriate mood and affect. (*Id.* at 21). She did not begin seeing a mental health specialist until May 2013, and at her initial appointment she was noted as behaving appropriately, having logical and coherent thoughts, normal perceptions, no apparent deficit in cognition, and an alert level of consciousness. (Dkt. 10 at 302). In November 2013, Plaintiff was noted by her primary care physician as having an intact memory, being oriented to time, place, person, and situation, having normal insight, exhibits, and judgment, although the doctor noted she did "not demonstrate the appropriate mood or affect" due to depression. (Dkt. 10-1 at 16). At Plaintiff's second appointment with the mental health specialist on December 18, 2013, she was found to exhibit appropriate behavior, logical and coherent thought, normal

perception, and to have no apparent deficit in cognition, an alert level of consciousness, and good insight and judgment. (Dkt. 10 at 286). Moreover, the ALJ found it significant that Plaintiff had only two appointments with the mental health specialist during the time period in question. (*Id.* at 16). The ALJ also considered Plaintiff's activities of daily living, including that she could care for her personal needs, drove, cleaned, and went shopping, albeit when the stores were not crowded. (*Id.* at 17). Further, Plaintiff informed her mental health specialist on May 2, 2013, that she was not impaired in her activities of daily living. (*Id.* at 302).

Under these circumstances, there was not a gap that required the ALJ to further develop the record; instead, the ALJ properly determined he could render a decision based on the other medical evidence of record. *See Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) ("[I]t is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution."); *Pahl v. Berryhill*, No. 16-CV-538S, 2018 WL 4327813, at *5 (W.D.N.Y. Sept. 11, 2018) (conservative course of treatment supported the ALJ's determination that the plaintiff was not as debilitated as she testified); *Pennock v. Comm'r of Soc. Sec.*, No. 7:14-CV-1524 (GTS/WBC), 2016 WL 1128126, at *5 (N.D.N.Y. Feb. 23, 2016) ("An ALJ is entitled to take a plaintiff's activities of daily living into account in making a credibility determination."), *adopted*, 2016 WL 1122065 (N.D.N.Y. Mar. 22, 2016). Similarly, the ALJ was under no obligation to ask LMSW LoVerdi whether her opinion was retroactive. *See Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) (finding the ALJ's denial of benefits was supported by substantial evidence where the plaintiff's

treating physicians did not express an opinion about the plaintiff's ability to work prior to the date last insured, and the record did not support that the plaintiff was disabled prior to that date); *Mauro v. Berryhill*, 270 F. Supp. 3d 754, 762 (S.D.N.Y. 2017) ("[W]hen a claimant does not show that a currently existing condition rendered her disabled prior to her date last insured, benefits must be denied."), *aff'd*, 746 F. App'x 83 (2d Cir. 2019).

For all these reasons, the Court finds no error in the ALJ's conclusion at step two that Plaintiff's mental health impairments were non-severe. However, even if the ALJ's step two determination was erroneous, given the thorough discussion of Plaintiff's history of mental impairments in the written determination, any error would be harmless. As explained in *Guerra v. Commissioner of Social Security*, No. 1:16-CV-00991 (MAT), 2018 WL 3751292 (W.D.N.Y. Aug. 7, 2018), *aff'd sub nom. Guerra v. Saul*, 778 F. App'x 75 (2d Cir. 2019):

> At step two, the ALJ is required to consider whether a claimant's medically determinable impairments are severe. Notably, "[i]t is the claimant's burden to show at step two that she has a severe impairment." *Rye v. Colvin*, No. 2:14-CV-170, 2016 WL 632242, at *3 (D. Vt. Feb. 17, 2016) (internal quotation omitted). A step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe. . . .
>
> Moreover, "[c]ourts have developed a specialized variant of harmless-error analysis with respect to Step 2 severity errors in social security proceedings. . . . [W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at Step 2 is harmless." *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014); *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (step two error was harmless where all of the claimant's conditions "were considered during the subsequent steps"). "Specifically, when functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully

> considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error." *Snyder*, 2014 WL 3107962 at *5.

*Id.* at *3; *see also Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (where ALJ excluded the plaintiff's anxiety disorder and panic disorder from his review, finding harmless error because the ALJ identified other severe impairments and proceeded with the subsequent steps, in which the ALJ specifically considered the plaintiff's anxiety and panic attacks); *Panfil v. Comm'r of Soc. Sec.*, No. 16-CV-947-MJR, 2018 WL 4610531, at *4 (W.D.N.Y. Sept. 26, 2018) ("To the extent the ALJ erred in not including occipital neuralgia, myofascial pain, cervicalgia, and personality disorder in his list of severe impairments, the error was harmless because the ALJ proceeded beyond step two and considered these impairments at the remaining steps.").

The written determination includes limitations based on Plaintiff's mental impairments—it includes a limitation that Plaintiff "could occasionally interact with coworkers, but never with the public." (Dkt. 10 at 18). Additionally, the ALJ specifically noted that he would "consider the impact of both the severe and non-severe impairments in formulating the [RFC]." (*Id.* at 17). Accordingly, even if the ALJ failed to properly consider certain mental health impairments at step two, any such error was harmless.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 17) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 13) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: August 4, 2020
       Rochester, New York